## REYNOLDS v. ADDEN.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR
THE EASTERN DISTRICT OF LOUISIANA.

No. 153.   Submitted December 10, 1889. — Decided May 19, 1890.

J. H. A. resides in Reading in Massachusetts.  J. A., his father, who had
formerly resided there, removed to Lancaster in New Hampshire, of
which he has since been a resident.  The son becoming insolvent, the
father became surety for one of his assignees, and for that purpose
signed a bond in which he was described as of Reading; *Held*, that, no
one being prejudiced thereby, this did not estop the father in a suit in
Louisiana between him and the assignee, involving a claim to property
of the insolvent there, from showing that he was not a citizen of Mas-
sachusetts, but a citizen of New Hampshire.

In Louisiana a transfer of the estate of an insolvent debtor by judicial oper-
ation is not binding upon the citizens and inhabitants of Louisiana, or of
any other State except the State in which the insolvent proceedings have
taken place — at least until the legal assignee has reduced the property
to possession, or done what is equivalent thereto.

IN EQUITY.  Decree dismissing the bill.  Plaintiff appealed.
The case is stated in the opinion.

*Mr. Gus A. Breaux* for appellant.

*Mr. A. A. Ranney* and *Mr. A. V. Lynde* for appellees.

MR. JUSTICE BRADLEY delivered the opinion of the court.

This suit was originally commenced in the Civil District
Court for the parish of Orleans, Louisiana, by petition filed
by John M. B. Reynolds against John Adden, to restrain him
from further prosecuting two certain suits in the same court,
or proceeding upon execution therein, and to have the same
declared illegal and void.  The suits referred to had been com-
menced by said John Adden by attachment against the goods
of his son, John H. Adden, situated in a store in New Orleans,
occupied by said John H. Adden for carrying on his business
therein under the management (as alleged) of the father, John

Adden, the son being a resident of Reading, Massachusetts. The grounds of the relief sought as stated in the petition are that on the 10th of March, 1882, John H. Adden, a resident of Reading, in the county of Middlesex, and State of Massachusetts, presented a petition of insolvency to the proper court there, from which a warrant was issued for the seizure of all his property, real and personal, and other proceedings were had as usual in such cases; and at a meeting of the creditors on the 23d of March, one Stillman E. Parker and the petitioner, Reynolds, were appointed assignees, and accepted the said trust, and gave bonds as required by law, the said John Adden executing the bond of said Parker as his surety; that in the schedule of assets filed by the insolvent with his petition of insolvency there appeared to be in his store, No. 58 Custom-House Street, New Orleans, about 600 cases of shoes, valued at $18,341.47, and other property, accounts, notes, etc., amounting to about $28,000, notes and accounts due to the Boston store amounting to about $10,000, and other assets in Boston amounting to about $3000; that on the petitioner going to New Orleans to take possession of the assets there, he discovered that the said John Adden (the father) had instituted suit in that court against John H. Adden for $20,000 on the 16th of March, 1882, and had issued an attachment therein, and attached the property, and obtained judgment by default on the 3d of April, 1882, with lien and privilege on the property attached; and that on the 4th of April, 1882, he had obtained a second attachment in another suit upon notes of said John H. Adden amounting to over $6000; all which proceedings of John Adden the petitioner alleged to be illegal, null and void by reason of the insolvency proceedings in Massachusetts, he, the said John Adden, being a resident of Massachusetts, and bound thereby, as well as for irregularities in said proceedings themselves, referred to in the petition, and the complicity (as alleged) of the said John Adden with his said son, in the measures taken by the latter. The petitioner alleged that he had applied to his coassignee, Stillman E. Parker, to join him in the petition, but he had refused.

A rule to show cause why a writ of injunction should not

issue was granted and heard by the court, upon which hearing a certified copy of the insolvent proceedings in Massachusetts was presented and received in evidence; and on the 15th of May, 1882, a preliminary injunction was issued restraining the defendant, John Adden, from enforcing his judgment in the first suit, and from proceeding further in the second; also restraining the sheriff of the parish from selling the goods seized by him. A motion to dissolve the injunction was subsequently made, and after argument was refused. The principal grounds of refusal were, that John Adden was a resident of Massachusetts, and had become surety of one of the assignees of his son, and was therefore estopped and bound by the proceedings in insolvency.

On the 24th of May, 1883, the defendant, John Adden, filed a petition for the removal of the cause into the Circuit Court of the United States for the Eastern District of Louisiana. In this petition Adden contends, amongst other things, that the insolvent laws of Massachusetts, under which Reynolds claims the property in controversy, impair the obligation of the contract between the petitioner and John H. Adden, and deprive the petitioner of his property without due process of law, and are in violation of the Constitution of the United States; that he had already, in an answer filed in the case, claimed that the said insolvent laws deprived him, who was a citizen of the State of New Hampshire, of the privileges and immunities of citizens in the several States, and were in violation of the 4th article of the Constitution of the United States. And after setting up various other claims of privileges and immunities under the Constitution of the United States, alleged to be violated by said insolvent proceedings, the petitioner further stated that at the commencement of this suit, and continuously since, he had been and still was a citizen of the State of New Hampshire, and that said Reynolds and John H. Adden then were, and had continually been, citizens of Massachusetts, and that Duffy, the sheriff of the parish of Orleans, was, and is, a citizen of the State of Louisiana. He further represented that in said suit the real controversy was between said Reynolds and the petitioner,

and that John H. Adden, and Duffy, the sheriff, were not necessary, but merely formal defendants. The civil district court refused the application for the removal of the cause; but a certified copy of the proceedings being presented to the Circuit Court of the United States, that court took jurisdiction of the case, and ordered it to be docketed on the equity side of the court. A motion was made to remand the cause to the state court, which, after argument, was refused. Evidence was taken as to the residence and citizenship of the defendant, John Adden, and as to his connection with the business of his son, and the general character of the proceedings had in the insolvency case in Massachusetts, and in the suits instituted by John Adden in New Orleans at the final hearing. The court dismissed the petition or bill of complaint, and the petitioner, Reynolds, has appealed.

The first question which we shall consider is as to the jurisdiction of the Circuit Court of the United States. It is strenuously contended by the appellant that the case ought not to have been removed from the state court, and ought to have been remanded to that court upon the motion made for that purpose. The ground of this contention is that John Adden, the defendant, was a citizen of Massachusetts, and not a citizen of New Hampshire, as alleged by him in his petition for removal; or that if he was not in fact a citizen of Massachusetts he was estopped from denying that he was such by his acts and declarations in the proceedings, both in Massachusetts and in New Orleans. In the insolvency proceedings in Massachusetts he became, on the 23d day of March, 1882, the surety of Stillman E. Parker, one of the assignees of John H. Adden, and in the same bond he is described as "John Adden, of Reading, in the county of Middlesex." It was also testified by one Ambrose Eastman that John Adden, being examined on oath at the meeting of the creditors of his son in Cambridge, Massachusetts, on the 23d of March, 1882, testified that he resided in the town of Reading, county of Middlesex, in Massachusetts. It is also shown that in his petition for the attachments issued at his suit in New Orleans on the 16th of March, 1882, and the 4th of April the same year, he is described as

"John Adden, residing in the State of Massachusetts." But these petitions were not signed by him, but by his attorneys in New Orleans. On the other hand, the overwhelming evidence of a great number of witnesses puts the matter beyond all doubt, that whilst he had at a former period resided in Reading, Massachusetts, he had removed from thence to Lancaster, in the State of New Hampshire, in October, 1874, and had continued to reside in Lancaster ever since that time. His being described as residing in Reading at the time of the insolvency of his son was a natural inadvertence arising from the fact that in consequence of the intimate relations between him and his son, (who did reside at Reading,) he was often at that place on business or social visits. The only question, therefore, that arises on this branch of the subject is whether he is permitted to show the truth, or whether he is estopped by the papers before referred to, in which he is described as residing in Massachusetts. The evidence of Ambrose Eastman is contradicted by a number of witnesses equally in a position to hear what Adden did testify, and there is no question in our minds that Mr. Eastman was mistaken in his recollection. As to the papers relied on by the appellant, we are of opinion that Adden was not concluded by the descriptions of person contained in them. He was so often in Boston and Reading, about the business of his son and in intercourse with him, that the descriptive words "of Massachusetts," or "of Reading, Massachusetts," or "residing in Massachusetts" might easily have been overlooked; and the same words in the petitions for attachment in New Orleans were applied and used by his counsel there, and not by himself. They present no case upon which an estoppel as to the citizenship of Adden can be founded. He might even have been a temporary resident of Massachusetts, and yet a citizen of New Hampshire. So that if the descriptive words were to be taken as true they would not be decisive. But they were words of mere description, and as such they could not estop him from showing the truth and the fact. They induced no conduct on the part of the appellant, or of any of the creditors of John H. Adden, which operated to their prejudice. They contained no element of

estoppel. We are satisfied, therefore, that the cause was properly removed from the state court, and that the Circuit Court of the United States had jurisdiction thereof.

The next question to be considered is as to the legal right of the defendant, John Adden, to institute the suits and issue the attachments which were prosecuted by him at New Orleans. As a resident and citizen of New Hampshire, was he concluded by the insolvent proceedings in Massachusetts, and the incidental transfer of the property of John H. Adden therein? If he was, then he had no right to take the proceedings which he did take in Louisiana. Had he been a citizen and resident of Massachusetts, the question would have been a different one. We have recently decided, in the case of *Cole* v. *Cunningham*, 133 U. S. 107, that a creditor, who is a citizen and resident of the same State with his debtor, against whom insolvent proceedings have been instituted in said State, is bound by the assignment of the debtor's property in such proceedings, and if he attempts to attach or seize the personal property of the debtor situated in another State, and embraced in the assignment, he may be restrained by injunction by the courts of said State in which he and his debtor reside. That was a case, arising in Massachusetts, and the effect and operation of assignments made by debtors of personal property belonging to them in other States is elaborately discussed by the Chief Justice delivering the opinion of this court. It was held that where a debtor and his creditor were both citizens and residents of Massachusetts, and the former went into insolvency, and regular proceedings under the insolvent laws of the State were had, the creditor might be enjoined by the courts of Massachusetts from attaching goods and credits of the debtor in New York, although in the latter State such attachment would be legal and valid. But that is not the present case. Here it is proved beyond doubt that John Adden was not a citizen or resident of Massachusetts, but was a citizen and resident of New Hampshire; and the question is whether, as such citizen of New Hampshire, he had a right to prosecute his claims against John H. Adden, by attachment of the goods of the latter in the State of Louisiana by the laws of the latter

State. It is by the laws of Louisiana that the question must be decided. Every State exercises to a greater or less extent, as it deems expedient, the comity of giving effect to the insolvent proceedings of other States, except as it may be compelled to give them full effect by the Constitution of the United States. Where the transfer of the debtor's property is the result of a judicial proceeding, as in the present case, there is no provision of the Constitution which requires the courts of another State to carry it into effect; and, as a general rule, no state court will do this to the prejudice of the citizens of its own State.

But without discussing the rules adopted in different States on this subject, which are fully examined and commented upon in the treatises on private international law, our present inquiry is confined particularly to the doctrine of the courts of Louisiana. And here we are entirely free from embarrassment. By a succession of cases decided by the Supreme Court of Louisiana, it has become the established law of that State,, that such transfers by judicial operation are not binding upon the citizens and inhabitants of Louisiana, or of any other State except the State in which the insolvent proceedings have taken place — at least until the legal assignee has reduced the property into possession or done what is equivalent thereto. *Olivier* v. *Townes*, 2 Martin, (N. S.,) 93 ; *Tyree* v. *Sands*, 24 La. Ann. 363 ; *Lichtenstein* v *Gillett*, 37 La. Ann. 522. In the case last cited, a receiver under a creditor's bill, appointed by a chancery court of Georgia, sought to recover possession of the property of the defendants adversely to the rights acquired by the plaintiffs under an attachment of that property in Louisiana. The plaintiffs' attachment was effected on the 26th of April, 1883. The intervention of the receiver was filed December 13, 1883. The Supreme Court of Louisiana, speaking through Mr. Justice Poché, after adverting to the distinction between a voluntary assignment and a compulsory one executed by order of a court, proceeds to say : " We do not propose to deny to him [the receiver], and we must not be understood as debarring him absolutely, of any right under his appointment to claim and obtain possession of the property

of Gillett Brothers, in case the exercise of such right does not militate with or destroy any existing rights acquired by creditors under proceedings instituted in our courts. In his brief, his counsel concedes that the claim which he now presses to our favorable consideration could not be enforced to the detriment of previously acquired rights of our own citizens. But he contends that the protection cannot be extended to plaintiffs for the reason that they are residents of the State of New York. . . . In our opinion, it is sufficient that the creditor who has acquired rights by legal process in our courts, be not a resident or a citizen of the State whose court has appointed a receiver who urges claims adverse to his acquired rights in our courts. The plaintiffs in this case, residents of New York, are not more amenable to the jurisdiction of the Georgia courts than would be a citizen of Louisiana, and they are legally entitled to the full protection of our courts against the claims of intervener."

Such, therefore, being the rule of comity applied by the courts of that State, we have no hesitation in saying that the defendant, John Adden, had a perfect right to prosecute his claims in the manner he did. No rule of law stood in his way, and nothing in the circumstances of the case, so far as we have been able to discover, prevented him from taking the course he did. It will be observed that his first suit in New Orleans was commenced on the 16th of March, 1882, a week prior to the meeting of the creditors in Cambridge and the appointment of the assignees in insolvency. He had not then done anything to interfere with his right to sue, and he did not afterwards do anything to take away that right. His going security on the bond of Parker as one of the assignees of his son is not shown to have any significancy in the matter in question. There was no reason why he should not approve of and acquiesce in the insolvent proceedings that were undertaken, nor why he should not, as an act of friendly accommodation, sign the bond of Parker, who seems to have been his brother-in-law. None of these things committed him to a position inconsistent with the prosecution of his claim in New Orleans.

We have given due attention to the minor points raised by the appellant's counsel, but do not find anything therein which calls for a reversal of the decree.' The decree of the Circuit Court is therefore

*Affirmed.*