## NASH v. PENNSYLVANIA R. CO.
### No. 5965.

Circuit Court of Appeals, Sixth Circuit.
June 27, 1932.

C. A. Meek, of Toledo, Ohio (Meek & Meek, of Toledo, Ohio, and Cowan, Adams & Adams, of Columbus, Ohio, on the brief), for appellant.

S. B. Randall, of Columbus, Ohio (Henderson, Burr, Randall & Porter, of Columbus, Ohio, on the brief), for appellee.

Before MOORMAN, MACK, and HICKS, Circuit Judges.

MACK, Circuit Judge.

This is an appeal from a judgment on a verdict for defendant, directed at the conclusion of plaintiff's case. Except for medical testimony, plaintiff was the sole witness. He was employed in defendant's yards at Columbus, Ohio, in several capacities; his primary duty, in which he had been engaged for some four months, was the operation of the sand-drying apparatus in the sand house, of which he had sole charge. In addition, he had several tasks to perform outside of the sand house.

The sand house is a narrow building having a basement and three single-room stories. Wet sand is elevated by a belt conveyor from a pit in the basement to bins on the third floor, whence it descends through chutes into hoppers on the second floor. The hoppers,

which stand over screened orifices in the floor of the second story, are in the form of inverted cones, with perforated walls. Each contains a stove, about which the wet sand, in falling, is automatically distributed. When dried thereby, the sand passes through the perforations in the walls of the hoppers and then drops through the screened opening to a sand drum on the ground floor; it is blown therefrom through a pipe leading out of the sand house and up to bins that lie above railroad tracks. From these bins, it is drawn off from time to time in sanding locomotives.

Access to the second story is had by a ladder through a small opening near the edge of the floor, a foot and a half from the nearest hopper. On ascending the ladder at the close of a working day, on July 22, 1929, plaintiff, according to his testimony, was struck by a rush of hot sand which burned him and thus forced him to release his hold and fall. He suffered a fracture of the heel. In his petition, filed December 7, 1929, the only negligence charged is that the defendant "failed and neglected to provide any barrier or other protection to keep said hot sand away from the opening."

Plaintiff invokes sections 6243, 6245, 9017 and 9018 of the General Code of Ohio. Under section 6243, on proof of an employee's injury "by reason of any defect or unsafe condition in any ways, works, boats, wharves, plant, machinery, appliances or tools, except simple tools, in any way connected with * * * the business of the employer, such employer shall be deemed to have had knowledge of such defect, before and at the time" of such injury, and the fact of such defect, when shown on the trial, is made "prima facie evidence of neglect on the part of such employer; but the employer may show by way of defense that such defect was not discoverable in the exercise of ordinary care." Section 6245 provides that when the injury was caused " * * * by any of the following, to-wit: The neglect of such employer in failing to properly * * * guard * * * or protect any of the ways * * * plant * * * tools in any way connected with * * * the business * * * in any manner required by statute or law of the state or United States; any defective or unsafe condition in the ways * * * plant * * * tools, except simple tools, * * *" continuance of the employee in the employment with knowledge of "such negligent omission or want of care or such defective or unsafe condition shall not be a defense unless by the terms of his employment it was ex-

pressly made the duty of such employee to report such neglect or such defective or unsafe condition," and he failed so to do and that the employer had otherwise no knowledge thereof. Section 9017, relating specifically to railroads, refers like section 6243 to "defects." Section 9018 provides as to railroad company employees' actions that "all questions of negligence and contributory negligence shall be for the jury." Counsel for defendant conceded at the argument that the record herein will not support a contention that plaintiff was engaged in interstate commerce at the time of the accident; the common law as modified by the Ohio statutes, governs.

The applicability of the above-noted provision of section 9018 to an action in the federal court, not decided in Erie R. Co. v. White, 187 F. 556 (C. C. A. 6), because not there involved, is now settled negatively by Herron v. Southern Pac. Co., 283 U. S. 93, 51 S. Ct. 383, 75 L. Ed. 857. If, therefore, there was no substantial evidence of the negligence as charged, the trial court properly directed a verdict for defendant.

In determining the meaning of "defect or unsafe condition" in section 6243 and in section 9017, we must examine also section 6245 where the same phrase is repeated. In this latter section, relating to assumption of risk, it is clear that these words are contrasted with the words in the preceding clause "neglect in failing to properly guard or protect"; in other words, a negligent failure properly to guard machinery or plant is not a defect or unsafe condition thereof. The latter phrase therefore evidently relates to some defect or unsafety inhering in the machine or the plant, as, e. g., some break, patent or latent, in the material, some loose board or hole on the floor. In this case, however, neither in allegation nor in proof is a defect or unsafe condition made the basis of the negligence; the charge is not that the hopper or the way or the plant was in any way defective or in an unsafe condition or that the machinery was negligently operated so as to permit or cause the hot sand to overflow, but that a barrier should have been erected to prevent the (impliedly) forseeable sudden overflow of the hot sand to reach the ladder floor opening. Therefore sections 6243 and 9017, which have to do only with a defect or unsafe condition or with a defect, respectively, are inapplicable.

While section 6245 takes away the defense of assumption of risk under certain specified circumstances and thus at times

makes the employer liable when, at common law, because of that defense, he would not be liable, it in no way relieves plaintiff of the burden of establishing 'that the injury was due to defendant's negligence, that is, to the employer's failure to exercise ordinary care to provide a reasonably safe place to work. Marble & Shattuck Chair Co. v. Mondrzecki, 42 Ohio Cir. Ct. R. 270, affirmed without opinion, 88 Ohio St. 536, 106 N. E. 1068. Unless plaintiff offers substantial proof of such negligence, no question of the availability of the defense of assumption of risk arises.

In our judgment the trial court properly found that there was no substantial evidence of such negligence. No proof was offered that the railroad had not adopted the usual and reasonable method of constructing its sand house or that plaintiff himself, who was in entire charge of the building, though he had from time to time seen loose sand under the ladder opening, had ever reported or indeed thought of a need of any such barrier guard; for aught that appears this was the only occasion on which, assuming as we must the truth of plaintiff's version of the accident, any real need of a barrier had arisen. In other words, while clearly under the evidence the jury could have found that the injury might have been averted if defendant had provided a barrier, there is a complete absence of any evidence which would entitle the jury to find that such failure in itself constituted a lack of ordinary, as distinguished from extraordinary, care to provide a reasonably, as distinguished from an absolutely, safe place to work.

The petition contains no averment as to whether petitioner is an alien or a citizen of the United States and, if the latter, whether or not he is a citizen of Ohio or of some state other than that of defendant's citizenship—Pennsylvania. The averment of residence in Ohio, unlike an averment of domicile therein, is not equivalent to an averment of Ohio citizenship even though the word "resides" in the Fourteenth Amendment giving citizenship in a state to a citizen of the United States who resides therein is interpreted to require not mere residence but domicile. An examination of the entire record which, under Sun P. & P. Ass'n v. Edwards, 194 U. S. 377, 24 S. Ct. 696, 48 L. Ed. 1027, we must make, satisfies us that Ohio was not merely petitioner's residence, but his domicile at the commencement of the suit and that, therefore, whether he was an alien or a citizen of the United States there

was, in fact, the requisite diversity of citizenship. As in Norton v. Larney, 266 U. S. 511, 515, 516, 45 S. Ct. 145, 147, 69 L. Ed. 413, we shall consider the petition "as amended to conform to the facts of record and sustain the jurisdiction of the district court."

Judgment affirmed.